ORIGINAL

PAMELA E. TAMASHIRO      #3492
Ocean View Center
707 Richards Street, Penthouse 7
Honolulu, Hawaii 96813
Telephone: (808) 528-3332
Facsimile: (808) 536-0458

Attorney for Defendant
MICHAEL NIELSEN
(01/03/2006)

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 0 3 2006

at 4 o'clock and 30 min. P M
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR. NO. 05-00362 JMS |
| ) | |
| Plaintiff, ) | NOTICE OF MOTION; MOTION |
| ) | TO SUPPRESS EVIDENCE; |
| vs. ) | MEMORANDUM IN SUPPORT OF |
| ) | MOTION; EXHIBIT "A"; |
| MICHAEL NIELSEN, ) | DECLARATION OF COUNSEL; |
| ) | CERTIFICATE OF SERVICE |
| Defendant. ) | |
| ) | Hearing: |
| ) | Time: |
| _____ ) | Judge: |

## NOTICE OF MOTION

TO:      MICHAEL KAWAHARA, ESQ.
         Assistant United States Attorney
         Room 6100 PJKK Federal Building
         300 Ala Moana Boulevard
         Honolulu, Hawaii 96813

         Attorney for Plaintiff
         UNITED STATES OF AMERICA

PLEASE TAKE NOTICE that the attached motion will be heard

before the Honorable _____ in his/her Courtroom in the

United States Courthouse, 300 Ala Moana Boulevard, Honolulu, Hawaii 96813 on

_____ at _____ o'clock a.m., or as soon

thereafter as counsel may be heard.

DATED:    Honolulu, Hawaii, *January 3, 2006*                 .


*Pamela E. Tamashiro*
Pamela E. Tamashiro
Attorney for Defendant
MICHAEL NIELSEN

2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 04-00370 SOM |
| | ) | |
| Plaintiff, | ) | MOTION TO SUPPRESS |
| | ) | EVIDENCE |
| vs. | ) | |
| | ) | |
| MICHAEL NIELSEN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## MOTION TO SUPPRESS EVIDENCE

Defendant MICHAEL NIELSEN ("Defendant"), by and through his attorney Pamela E. Tamashiro, hereby moves this Court for an order suppressing the evidence recovered from Defendant's truck on August 11, 2005 on the grounds that said search of the truck and the seizure of evidence therein were done in violation of Defendant's constitutional right to be free from unreasonable searches and seizures.

This motion is made pursuant to Rule 47, Federal Rules of Criminal Procedure, and is based upon the Fourth Amendment to the U.S. Constitution, the records and files herein, the memorandum in support of motion and the declaration of counsel attached hereto, and any evidence that may be presented on the hearing on the motion.

DATED:    Honolulu, Hawaii, _January 3, 2006_____ .

_Pamela E. Tamashiro_____

Pamela E. Tamashiro
Attorney for Defendant
MICHAEL NIELSEN

2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 04-00370 SOM |
| | ) | |
| Plaintiff, | ) | MEMORANDUM IN SUPPORT |
| | ) | OF MOTION; EXHIBIT "A" |
| vs. | ) | |
| | ) | |
| MICHAEL NIELSEN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## MEMORANDUM IN SUPPORT OF MOTION

## I.    STATEMENT OF THE CASE

On August 11, 2005, law enforcement officers observed Defendant

MICHAEL RAYMOND NIELSEN ("Defendant") arrive at the Honolulu

International Airport aboard ATA flight #4755 from Los Angeles. According to the

ATA passenger name records ("PNR"), Defendant had checked-in two pieces of

luggage. The flight arrived in Honolulu at Gate #21 at approximately 10:30 a.m.

Defendant was the first passenger to exit from the jetway.

Defendant walked through the terminal at a fast pace. He did not go to the

baggage claim area. Instead he walked directly toward the interisland terminal

parking lot. Defendant then entered a green-colored pickup truck which was parked

in the lot. Defendant then drove his truck across the street from where the ATA

baggage claim area was located.  After parking, Defendant remained seated in the truck for approximately five (5) minutes.  Defendant eventually exited his truck and walked into the ATA baggage claim area.

Defendant then retrieved his two checked-in bags.  At this point, Defendant was approached by DEA Hawaii Airport Task Force officer Christopher Kobayashi ("Officer Kobayashi").[1]  According to Officer Kobayashi, Defendant initially was very cooperative and cordial.  Officer Kobayashi inquired whether he could search Defendant's two bags.  Defendant consented.  Officer Kobayashi searched Defendant's two bags.  No contraband was found.

After searching Defendant's bags, Officer Kobayashi asked Defendant how he would be leaving the airport.  Defendant stated that he was going to get picked up and that his mother was coming.  Defendant then said that he did not need a ride and asked Officer Kobayashi where the nearest taxicab station was located. Defendant stated that he was on his way to his brother's sentencing[2] and that his mother and everyone else would not fit in his truck.  Officer Kobayashi told Defendant that he would direct him to the nearest taxicab station.

_____

[1] Officer Kobayashi told Defendant that he had encountered Defendant on a previous occasion when Defendant was in possession of U.S. currency.  Defendant related that he remembered Officer Kobayashi as well as the previous encounter.

[2] *See* United States v. Mark Nielsen, Cr. No. _____.

2

Upon arriving at the taxicab station, Defendant told the taxicab dispatcher that he needed a taxi. Officer Kobayashi told Defendant that he needed to pick up his bags and step away from the taxicab station curb. Defendant asked whether he was being detained. Officer Kobayashi replied that he was being detained.

Defendant sat on a bench in the taxicab area. By this time more officers had arrived. One officer sat to the right of Defendant. The other officers remained standing, blocking Defendant's path.

At the taxicab station, Officer Kobayashi advised Defendant that he knew that Defendant's truck was parked nearby and that he, Defendant, did not need a ride. Officer Kobayashi then asked Defendant if he would consent to a search of his truck. At this point, Defendant's attitude and demeanor suddenly changed. Defendant replied, "[F]uck you, you're not searching my truck."

At this time, Officer Kobayashi stated within earshot of Defendant that he was going to start on a search warrant for Defendant's truck. According to Officer Kobayashi, "Defendant then several minutes later changed his mind and on his own initiative, he gave consent to search his truck." *See* August 12, 2005 Affidavit of Christopher Kobayashi in support of Criminal Complaint attached hereto as Exhibit "A."

The officers then searched Defendant's truck without a warrant. The officers

3

seized two black socks and one white sock from under the passenger seat of the truck. Inside the socks, the officers recovered five-ziplock bags containing a white crystalline substance. From inside Defendant's fanny pack located within Defendant's truck, the officers searched and seized ziplock bags containing small bags of black pearls. A piece of duct tape was also recovered from the driver's side floor area of Defendant's truck.

After recovering the evidence from Defendant's truck, the officers conducted a strip search of Defendant. Photographs of Defendant's buttocks were taken which purport to show duct tape adhering to his buttocks and genital areas.

Defendant never gave anyone permission to search his truck; nor did he consent to a search of his truck. Defendant brings this motion to suppress all the evidence recovered from his truck and all evidence and/or statements made by Defendant on August 11, 2005, on the basis that the search of Defendant's truck and the seizure of evidence from within his truck were made in violation of Defendant's Fourth Amendment right to be free from unreasonable searches and seizures.

## II.  ARGUMENT

### A.  The Officers Lacked Probable Cause To Arrest Defendant At The Time They Searched His Truck.

4

Probable cause to arrest exists when, at the time of arrest, law enforcement agents have reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing any offense. United States v. Pinion, 800 F.2d 976, 979 (9th Cir. 1986) cert.denied 107 S.Ct. 1587 (1987).

In this case, law enforcement officers observed Defendant deplane in Honolulu. Apparently, at least one officer, Officer Kobayashi knew Defendant from a prior airport encounter in which Defendant was stopped by Officer Kobayashi. There is no evidence that Defendant was detained or arrested during this first encounter with law enforcement officers at the airport. The prior airport encounter is therefore of no legal significance in terms of establishing probable cause to arrest Defendant on August 11, 2005.

After observing Defendant move his truck to an area immediately across his baggage claim area, Officer Kobayashi approached Defendant at the baggage claim area. Defendant consented to engage in conversation with Officer Kobayashi. Defendant was cooperative and cordial. Defendant even consented to a search of his two checked-in bags. The search of Defendant's checked-in bags revealed no contraband. Clearly, at this time, law enforcement officers did not have probable cause to arrest Defendant.

Nonetheless, the officers further detained Defendant. In fact, Officer

Kobayashi, in response to Defendant's question whether he was being detained,

replied in the affirmative. Moreover, other officers had responded by this time.

One officer sat to Defendant's right on a taxicab bench. The other officers stood

around Defendant preventing him from leaving the area. Defendant was not free to

leave the area. Clearly, what had started as a consensual encounter between

Defendant and law enforcement officers had turned into an arrest.

The arrest of Defendant in the absence of probable cause was unlawful. The

search of Defendant's checked-in bags revealed no contraband. The officers had

developed no incriminating evidence to support Defendant's arrest. If anything, the

absence of any contraband in Defendant's bags should have served to exonerate

Defendant of any criminal wrongdoing. Yet, the officers instead chose to arrest

Defendant and to unlawfully search his truck in the absence of probable cause to

arrest. In the absence of probable cause to arrest, the search of Defendant's truck

cannot be justified on the basis of a search incident to a lawful arrest.

## B.  Defendant Did Not Consent To a Search of His Truck.

A consent search is proper if it is freely and voluntarily given and is not the

result of duress or coercion. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct.

2041, 3 L.Ed.2d 854 (1973). The voluntariness of the consent is determined by the

6

totality of the circumstances. U.S. v. Velarde, 25 F.3d 848, 797 (9th Cir. 1994).

Several factors ordinarily are relevant in determining whether consent was given

voluntarily, including: (1) the age, intelligence and education of the person who gave

consent, (2) whether he was advised of his constitutional rights, (3) how long he

was detained before consenting, (4) whether he consented immediately or only after

repeated requests by authorities, (5) whether physical coercion was used, and (6)

whether he was in police custody at the time he gave his consent. Schneckloth, 412

U.S. at 226, 893 S.Ct. 2041.

Consent given during an illegal detention is presumptively invalid. U.S. v.

Cellitti, 387 F.3d 618, 622 (7th Cir. 2004). Consent is tainted by illegal stops,

detentions, or arrests. United States v. Jerez, 108 F.3d 684, 695 & n. 13 (7th Cir.

1997). In assessing whether the taint of an illegal seizure was dissipated before

consent was given, we consider the time that elapsed between the illegal act and the

subsequent acquisition of evidence; the presence of intervening factors; and the

purpose and flagrancy of the official misconduct. Cellitti, 387 F.3d at 623; *citing*

Brown v. Illinois, 422 U.S. 590, 603-04, 95 S.Ct. 2254, 45 L.Ed.2d 41 6 (1975).

The government bears the burden of demonstrating that the taint of an illegal

seizure has been purged so as to validate a consent to search following an illegal

seizure. U.S. v. Velazco-Durazo, 372 F.Supp.2d 520, 530 (9th Cir. 2005), *citing*

7

United States v. Bautista, 362 F.2d 584, 592 (9th Cir. 2004). When consent to search is given by a person who remains illegally detained, the government is unlikely to meet is burden of showing that the consent was sufficiently attenuated from the illegality. Cellitti, 387 F.3d at 623.

As discussed above, Defendant was illegally detained when law enforcement officers allegedly obtained his "consent" to search his truck. Defendant denies that he consented to a search of his truck. The facts do not support the conclusion that Defendant ever consented to a search of his truck. According to Officer Kobayashi, Defendant was initially cordial and cooperative during the encounter until he was asked whether the police could search his truck. Defendant clearly articulated his response. "You're not searching my truck." The uncontroverted evidence is that Defendant did not consent to a search of his truck.

Moreover, Defendant's arrest was made in the absence of probable cause. The search of Defendant's truck occurred shortly after Defendant was illegally detained by law enforcement officers. Based upon the facts and circumstances present in this case, the government cannot demonstrate that the taint of Defendant's illegal arrest had been purged so as to validate Defendant's consent to search following his illegal seizure. Wong Sun v. United States, 371 U.S. 471, 487-88 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Accordingly, Defendant's motion to

suppress evidence should be granted.

III.   **CONCLUSION**

At the time law enforcement officers searched Defendant's truck, they did not

have did not have a warrant to search Defendant's truck.  They did not have

probable cause to arrest Defendant.  The search and seizure of evidence from

Defendant's truck cannot be justified on the basis of a search incident to lawful

arrest.

The evidence clearly demonstrates that Defendant did not consent to the

search of his truck.  Moreover, Defendant's unlawful arrest tainted the subsequent

search of Defendant's truck and the seizure of evidence  therefrom.  The

government has failed to produce evidence to demonstrate that any exception to the

warrant requirement justified the warrantless search of Defendant's  truck and the

seizure of evidence therein.  Accordingly, all the evidence seized from Defendant's

truck and all evidence obtained after the unlawful search must be suppressed.

DATED:    Honolulu, Hawaii, _January 3, 2006_ .

_Pamela E. Tamashiro_
Pamela E. Tamashiro
Attorney for Defendant
MICHAEL NIELSEN

9

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

CHRISTOPHER KOBAYASHI, after being duly sworn, deposes and states as follows:

1. I am a Honolulu Police Department (HPD) Officer, currently assigned to the DEA Hawaii Airport Task Force (HATF) at Honolulu International Airport, HI. In this capacity, I am also Federally cross-designated as a DEA Task Force Officer.

2. On August 11, 2005, defendant Michael Raymond Nielsen arrived at the Honolulu International Airport on ATA flight #4755 inbound from Los Angeles. According to ATA passenger name records (PNRs), defendant had checked-in two pieces of luggage. This flight arrived at Gate #21 at about 10:30 a.m.; defendant was the first passenger to exit from the jetway.

3. Defendant walked through the terminal at a fast pace and never went to baggage claim. Instead, defendant walked directly towards the interisland terminal parking lot. Defendant then entered a green-colored pickup truck which was parked there. Defendant then drove his truck to the overseas terminal parking lot and parked the truck across the street from where the ATA baggage claim area would be. After parking, defendant remained seated in the truck for approximately five minutes. Defendant eventually exited from his truck and walked into the baggage claim area.

4. After defendant had retrieved his two checked-in bags, I consensually encountered him in the baggage claim area. When I first encountered him and during the initial stages of my interview, defendant was very cooperative and cordial. Defendant also gave me consent to search his two bags; I did not find any illegal drugs in these bags.

5. After searching his bags, I also asked defendant how he would be leaving the airport, and defendant said that he was going to get picked up. Defendant then said that he did not need a ride and asked where the nearest taxicab station was located. While we were walking out of baggage claim towards the taxicab station, defendant was using his cellphone, saying in a loud voice that he was going to catch a taxi and did not need a ride.

6. At the taxicab station, I advised defendant that I knew his truck was parked nearby and that he did not need a taxi. I then asked for consent to search his truck. At this point, defendant's attitude and demeanor suddenly changed; his response back to me was "fuck you, you're not searching my truck" (NOTE: he had not used any profanity prior to this time). Defendant at this time was also becoming visibly nervous. He started looking

EXHIBIT "A"

around, his hands began to shake, his face became flushed, and he started to perspire.

7. Defendant was detained at the taxicab station, while other HATF members and I took action to prepare to obtain a search warrant, within defendant's earshot. Defendant then several minutes later changed his mind and on his own initiative, he gave consent to search his truck.

8. During the ensuing search, an estimated 600 grams of a crystalline substance was found under the passenger seat of defendant's truck. This substance field-tested positive for the presence of methamphetamine. Possession of this quantity of methamphetamine is not consistent with personal use, but is more consistent with distribution. Defendant was subsequently arrested at about 11:45 a.m. on August 11, 2005.

9. This methamphetamine was packaged in five plastic bags. The plastic bags themselves were hidden within three socks. There was silver-colored duct tape affixed to these three socks. When one of these socks was touched, it felt moist and damp. It also appeared that this duct tape had recently been used to affix those socks to someone or something.

10. An examination of defendant's lower body revealed the following: there were indentations and other marks on the skin along the outside of both of defendant's thighs, which had been formed by objects being affixed there and pressed into the skin for some length of time. In addition, there were also generally parallel, silver-colored lines of adhesive residue along the outside of both of defendant's thighs. Finally, in the cleft between defendant's buttocks, there was silver-colored adhesive residue present on his left cheek with threads hanging down. All of this was indicative of a very recent external bodycarriage of

contraband using duct tape.

FURTHER AFFIANT SAYETH NAUGHT.

DATED: Honolulu, Hawaii, August 12, 2005.

ORIGINAL SIGNED BY
CHRISTOPHER KOBAYASHI

This Criminal Complaint and Affidavit in support thereof were
presented to, approved by, and probable cause to believe that the
defendant above-named committed the charged crime found to exist
by the undersigned Judicial Officer at 10:30 a.m. on August
12, 2005.

Subscribed and Sworn to Before Me,
this 12th Day of August 2005.

ORIGINAL SIGNED BY
KEVIN S.C. CHANG
United States Magistrate Judge

SEAL

3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 04-00370 SOM |
| | ) | |
| Plaintiff, | ) | DECLARATION OF COUNSEL |
| | ) | |
| vs. | ) | |
| | ) | |
| MICHAEL NIELSEN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## DECLARATION OF COUNSEL

I, Pamela E. Tamashiro, do hereby declare and state as follows:

1.     I am the attorney appointed to represent Defendant MICHAEL

NIELSEN ("Defendant") in the above-captioned case.

2.     The facts and circumstances contained herein are true and correct to

the best of my information and belief.

3.     Exhibit "A" attached to the memorandum in support of motion is a true

and correct copy of the August 12, 2005 Affidavit of Christopher Kobayashi in

support of Criminal Complaint.

DATED:     Honolulu, Hawaii, _____January 3, 2006_____.

_____Pamela E. Tamashiro_____

Pamela E. Tamashiro

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 04-00370 SOM |
| | ) | |
| Plaintiff, | ) | CERTIFICATE OF SERVICE |
| | ) | |
| vs. | ) | |
| | ) | |
| MICHAEL NIELSEN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## CERTIFICATE OF SERVICE

I, Pamela E. Tamashiro, hereby certify that a true and exact copy of the

foregoing document was duly mailed and/or hand-delivered to the following

MICHAEL KAWAHARA, ESQ.
Assistant U.S. Attorney
PJKK Federal Building
300 Ala Moana Boulevard, Room 6100
Honolulu, Hawaii  96850

Attorney for Plaintiff
United States of America

DATED:    Honolulu, Hawaii, _January 3, 2006_____.

_Pamela E. Tamashiro_____
Pamela E. Tamashiro
Attorney for Defendant
MICHAEL NIELSEN