ORIGINAL

PAMELA E. TAMASHIRO        #3492
Ocean View Center
707 Richards Street, Penthouse 7
Honolulu, Hawaii  96813
Telephone:  (808) 528-3332
Facsimile:   (808) 536-0458



FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 1 5 2006

at ___ o'clock and ___ min. ___ M
SUE BEITIA, CLERK

Attorney for Defendant
MICHAEL NIELSEN
(02/15/2006)

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 05-00362 JMS |
| | ) | |
| Plaintiff, | ) | DEFENDANT'S REPLY |
| | ) | MEMORANDUM; CERTIFICATE |
| vs. | ) | OF SERVICE |
| | ) | |
| MICHAEL NIELSEN, | ) | Hearing:    February 16, 2006 |
| | ) | Time:       9:00 a.m. |
| Defendant. | ) | Judge:      Michael Seabright |
| | ) | |

## DEFENDANT'S REPLY MEMORANDUM

### I.    ARGUMENT

The government advances two exceptions to the warrant requirement to support the warrantless search of Defendant's truck: (1) Defendant consented to the search of his truck; and (2) in the alternative, the warrantless search of Defendant's truck was justified under the automobile exception to the warrant requirement.  The government's position fails because: (A) Defendant did not

consent to a search of his truck; (B) Defendant was unlawfully "seized" at the taxicab station; (C) probable cause did not exist for the warrantless search of Defendant's truck; and (D) assuming arguendo that Defendant consented to a search of his truck, his consent was vitiated by his unlawful seizure.

A.    **Defendant Did Not Consent to a Search of His Truck**.

The existence of consent to search is not lightly to be inferred, and is a question of fact to be determined from the totality of the circumstances. United States v. Patacchia, 602 F.2d 218, 219, as amended by 610 F.2d 648 (1979) (9th Cir. 1979). In that case, the Ninth Circuit found that Patacchia's response to border patrol agents' request to open his car trunk, "I would but I can't," was not the equivalent of "Yes, you may open it if you can" so as to constitute defendant's valid consent to search. The court concluded that defendant did not consent to a search of his car trunk which contained marijuana.

In United States v. Chan-Jimenez, 125 F.3d 1324 (9th Cir. 1997), the Ninth Circuit identified five (5) factors which tend to show a lack of voluntariness:

> In order to establish the validity of a consent to search, the government bears the heavy burden of demonstrating that the consent was freely and voluntarily given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). Whether consent to search was voluntarily given or not is "to be determined from the totality of the circumstances." *Id.* at 227, 93 S.Ct. at 2048. In *United States v. Welch*, 4 F.3d 761, 763 (9th Cir. 1993), we

2

identified several factors to be considered in determining whether consent to search was voluntary. Among the factors that tend to show a lack of voluntariness are: (1) the person was in custody; (2) the officer had his weapon drawn; (3) the officer failed to administer *Miranda* warnings; (4) the officer did not inform the person of his right to refuse to consent; and (5) the person was told that a search warrant could be obtained.

In this case, Defendant clearly stated his refusal to consent to a search of his truck. His statement, "Fuck you, you're not searching my truck," unequivocally communicates his refusal to consent to a search of his truck. Defendant did not consent to the search.

Moreover, as discussed below, Defendant was in custody. Defendant was not administered *Miranda* warnings, Defendant was not informed of his right to refuse to consent, and Defendant was told that a search warrant could be obtained. In addition, no written consent form was signed by Defendant. Based upon the totality of the circumstances, Defendant clearly and unequivocally stated his refusal for the search. Defendant did not consent to a search of his truck.

**B.     Defendant Was Unlawfully "Seized" at the Taxicab Station**

In determining whether an official detention has ripened into an arrest, the Supreme Court considers the "totality of the circumstances." United States v. Del Vizo, 918 F.2d 821, 824 (9th Cir. 1990), citing United States v. Baron, 860 F.2d 911, 914 (9th Cir. 1988), *cert. denied*, 490 U.S. 1040, 109 S.Ct. 1944, 104 L.Ed.2d

3

414 (1989). There has been an arrest if, under the circumstances, a reasonable person would conclude that he was not free to leave after brief questioning. Del Vizo, id., *citing* United States v. Pinion, 800 F.2d 976, 978-79 (9th Cir. 1986), *cert. denied*, 480 U.S. 936, 107 S.Ct. 1580, 97 L.Ed.2d 770 (1987). The circumstances of the situation is viewed from the perspective of the person seized. Del Vizo, id., citing United States v. Delgadillo-Velasquez, 856 F.2d 1292, 1295 (9th Cir.1988).

In United States v. Chan-Jimenez, the Ninth Circuit found that defendant, a motorist, was seized within the meaning of the fourth amendment when police obtained and failed to return his driver's license and registration, and proceeded with an investigation. "When a law enforcement official retains control of a person's identification papers, such as vehicle registration documents or a driver's license, longer than necessary to ascertain that everything is in order, and initiates further inquiry while holding on to the needed papers, a reasonable person would not feel free to depart." Chan-Jimenez, 125 F.3d at 1326.

The government's opposition memorandum confirmed for the first time that Defendant's two encounters with law enforcement officers at the airport were the result of a confidential informant's tip. The first encounter occurred on April 26, 2005. During that encounter, Defendant was stopped at the Honolulu airport security checkpoint because he was carrying a large sum of cash. Three days later,

4

upon his return to Honolulu, he was again stopped and his hand carry articles searched. NO CONTRABAND WAS FOUND. At best, the CI's tip was partially corroborated, i.e., Defendant was where the CI said he would be, and partially and significantly uncorroborated, i.e., no contraband was found.

The second encounter based on the CI's tip occurred on August 11, 2005, which forms the basis of this case. According to the CI's tip, it was Defendant's *modus operandi* to body carry drugs. It should be noted that in the first encounter, no drugs were found anywhere, much less on Defendant's person. In this case, the officers did not even conduct a pat down of Defendant's person. It is questionable whether the CI's tips were ever corroborated.

Assuming arguendo that the CI's tip formed the basis of reasonable suspicion to stop Defendant at the taxicab station, the events that followed served to dispel suspicion away from any criminal activity on the part of Defendant. At the baggage claim area, Defendant allowed the officers to search his two, checked in bags. NO CONTRABAND WAS FOUND. Defendant used his cellphone to call his mother. The officers seized his cell phone and did not return it. The officers continued to follow Defendant to the taxicab station. At the taxicab station, more officers arrived. One of the newly arriving officers searched Defendant's two pieces of luggage again. The officer seized Defendant's keys,

including the key to Defendant's truck, to pry open and search a container within one of Defendant's luggage. Defendant asked the taxicab dispatcher for a taxi and when a cab arrived, one of the officers told the dispatcher that Defendant did not need a cab. Defendant was not allowed to enter the taxi. At this point, Defendant asked whether he was being detained. He was told that he was being detained. Clearly at this point, a reasonable person in Defendant's position would have believed that he was not free to leave. What began as a consensual encounter or a detention based on reasonable suspicion clearly turned into a "seizure" under the fourth amendment when Defendant was not allowed to leave the airport in the taxi.

Defendant also learned for the first time in the government's opposition memorandum that a narcotics dog was used and that the DOG DID NOT ALERT to Defendant's truck. Rather than wait and try a second time with the dog or to impound Defendant's vehicle and get a warrant, the officers searched Defendant's truck without a warrant. The failure of the dog to alert on Defendant's truck is yet another, highly significant factor which dispelled suspicion away from any wrong doing on Defendant's part. Nevertheless, Defendant was further detained.

Contrary to what the government claims, the subsequent actions of law enforcement objectively pointed away from any ripening of reasonable suspicion

6

into probable cause. In this case, reasonable suspicion never ripened into probable cause to search Defendant's truck. Defendant was unlawfully seized at the taxicab station.

## C.    Probable Cause Did Not Exist For the Warrantless Search of Defendant's Truck

As discussed above, reasonable suspicion never ripened into probable cause to seize Defendant. The warrantless search of Defendant's truck can be upheld only if supported by probable cause. The standard defining probable cause to seize an individual is identical to the standard defining probable cause to search. United States v. Freitas, 716 F.2d 1216,1220-21, fn3 (9th Cir. 1983). In determining whether probable cause to search exists, the court must consider whether at the time of the search the facts and circumstances within the agents' knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief that an item subject to seizure would be found in the place to be searched. Freitas, 716 F.2d at 1220-21 (internal punctuation omitted) citing United States v. Garza-Hernandez, 623 F.2d 496, 499 (7th Cir. 1980) (quoting Brinegar v. United States, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 1320-1311, 93 L.Ed. 1879 (1949)).

For the reasons discussed in part B., above, and particularly because at the

time the officers conducted a search of Defendant's truck, the narcotics dog had

failed to alert on Defendant's truck, probable cause to search under the automobile

exception did not exist at the time law enforcement officers searched Defendant's

truck. The search cannot be sustained under the automobile exception to the

warrant requirement.

**D.    Assuming Arguendo that Defendant Consented to a Search of His Truck, His Consent Was Vitiated by His Unlawful Seizure**

As discussed in part A., above, Defendant did not consent to a search of his

truck. Assuming arguendo that Defendant did consent, his consent was vitiated by

his unlawful seizure.    When an individual gives consent to search after an

arrest made without probable cause, that consent to search, like a confession, may

be tainted by the illegal arrest and so invalid and suppressible. United States v.

Patzer, 277 F.2d 1080, 1084-85 (9th Cir. 2002), citing United States v. Taheri, 648

F.2d 598, 601 (9th Cir. 1981). Consent may be tainted even though it is

"voluntary" within the meaning of the Fifth Amendment. Patzer, id. The relevant

factors in determining whether a consent to search is tainted are: (1) whether

*Miranda* warnings were administered prior to the consent; (2) the temporal

proximity of the arrest to the consent; (3) the presence of intervening

circumstances, and (4) the purpose and flagrancy of the official misconduct. Id.

The government bears the burden of showing admissibility. <u>Id</u>.

At the time of the search of Defendant's truck herein, no Miranda warnings were administered prior to the consent; according to the government, the consent came on the heels of Defendant's unlawful seizure; and the only intervening circumstance was that the narcotics dog FAILED TO ALERT on Defendant's truck. With respect to the fourth element, i.e., the purpose and flagrancy of the official misconduct, in <u>Patzer</u>, the court noted that although the officer did not engage in any flagrant misconduct to obtain defendant's consent, the other three factors pointed strongly in the direction of finding that defendant's consent was a direct product of his unlawful arrest. <u>Patzer</u>, 277 F.3d at 1085. Similarly, although the officers in this case may not have engaged in any flagrant misconduct, the other three factors point strongly in finding that Defendant's consent was a direct product of his unlawful seizure.

## II.    <u>CONCLUSION</u>

Defendant's motion to suppress should be granted. The government's proferred justification for the warrantless search of Defendant's truck fails because: (A) Defendant did not consent to a search of his truck; (B) Defendant was unlawfully "seized" at the taxicab station; (C) probable cause did not exist for the warrantless search of Defendant's truck; and (D) assuming arguendo that

Defendant consented to a search of his truck, his consent was vitiated by his unlawful seizure.

In <u>Freitas</u>, *supra*, the Ninth Circuit concluded that although the suspicions of the federal officers whose warrantless search of defendant's vehicle led to the discovery of incriminating evidence, cocaine, were not altogether unreasonable, they did not amount to probable cause to search. <u>Freitas</u>, 716, F.2d at 1218. The court went on to state:

> The question whether probable cause to search the appellant's vehicle was present is extremely difficult, because this is a borderline case. Had the FBI agents here obtained a determination that probable cause existed, in the form of a warrant from a neutral and detached magistrate, prior to making the arrests and search in this case, we might well have held that this is a doubtful case in which preference should be given to the validity of a warrant. But here we examine a search "without a warrant [that] bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less reliable procedure of an after-the-event justification for the arrest or search, too likely to be subtly influenced by the family shortcomings of hindsight judgment." [citations omitted]. Because the agents did not choose to seek a warrant, however, we are mindful of the Supreme Court's statement that "[l]aw enforcement officers may find it wise to seek arrest warrants where practicable to do so, and their judgments about probable cause may be more readily accepted where backed by a warrant issued by a magistrate." *United States v. Watson*, 423 U.S. 411, 423, 96 S.Ct. 820, 827, 46 L.Ed.2d 598 (1979) (footnote omitted). *See also United States v. Ventresca*, 380 U.S. at 106, 85 S.Ct. at 744 (citing *Jones v. United States*, 362 U.S. 257, 270, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960)) ("in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall").

<u>Freitas</u>, 716 F.2d at 1224.

Law enforcement officers chose to bypass the safeguards provided by seeking a warrant prior to searching Defendant's truck.  Under the facts of this case, the warrantless search of Defendant's truck cannot be justified under any exception to the warrant requirement.  Accordingly, Defendant's motion to suppress should be granted.

DATED:     Honolulu, Hawaii, February 15, 2006.

Pamela E. Tamashiro
Attorney for Defendant
MICHAEL NIELSEN

11